## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

EYAL VADAI, on behalf of himself and
others similarly situated,

                 Plaintiff,

v.

CELEBRATION CRUISE LINE, LLC,
and CARIBBEAN CRUISE LINE, INC.,

                 Defendants.

_____/

### CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Eyal Vadai ("Plaintiff"), individually and on behalf of all others similarly situated, through counsel, and for his complaint against defendants Celebration Cruise Line, LLC and Caribbean Cruise Line, Inc. (collectively, "Defendants"), states and alleges as follows:

### NATURE OF THE ACTION

1.      This action seeks statutory damages and injunctive relief pursuant to the Telephone Consumer Protection Act, codified at 47 U.S.C. § 227, in connection with unsolicited telemarketing calls made by Defendants to Plaintiff and others similarly situated.

### JURISDICTION

2.      This Court possess subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims asserted herein arise under Federal law and pursuant to 28 U.S.C. § 1332(d) because the amount in controversy is, upon information and belief, in excess of $5 million and there is minimal diversity between Plaintiff and Defendants.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this district and acts alleged herein occurred within this district.

## PARTIES

3.      Plaintiff Eyal Vadai ("Plaintiff") is an individual residing in New York, New York.

4.      Celebration Cruise Line, LLC ("Celebration Cruise Line") and Caribbean Cruise Line, Inc. ("Caribbean Cruise Line" and together with Celebration Cruise Line, the "Defendants") are Florida business entities with principal places of business in this district, and mailing addresses at 2419 E. Commercial Blvd., Fort Lauderdale, Florida 33308 – as were their principal place of business until their most recent annual report filings with the Florida Department of State, Division of Corporations.

## TELEPHONE CONSUMER PROTECTION ACT

5.      The Telephone Consumer Protection Act is codified at 47 U.S.C. § 227 (the "Telephone Consumer Protection Act").

6.      The Telephone Consumer Protection Act prohibits, *inter alia¸* calls made using an artificial or prerecorded voice:

> It shall be unlawful for any person within the United States…—
>
> **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> > **(i)** to any emergency telephone line …;
> > **(ii)** to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or
> > **(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

**(B)** to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes…

(47 U.S.C. § 227(b)(1).)

7.    The Regulations prescribed under 47 U.S.C. § 227 include 47 C.F.R. § 64.1200(b), which provides the following:

All artificial or prerecorded voice telephone messages shall:

(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated;

(2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign; and

(3) In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section. When the called person elects to opt out using such mechanism, the mechanism, must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call. When the artificial or prerecorded voice telephone message is left on an answering machine or a voice mail service, such message must also provide a toll free number that enables the called person to call back at a later time and connect directly to the automated, interactive voice- and/or key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list.

(47 C.F.R. § 64.1200(b)(1)-(3).)

8.     The Telephone Consumer Protection Act, to compel compliance with its prohibitions and the regulations prescribed under it, provides that:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
>
> (A)     an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> (B)     an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> (C)     both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

(47 U.S.C. § 227(b)(3).)

9.     Under the Telephone Consumer Protection Act, as interpreted by the Federal Communications Commission ("FCC"), a company on whose behalf a telephone solicitation is made bears ultimate responsibility for any violations of the Telephone Consumer Protection Act.  *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Red. 12391, 12397, ¶ 13 (1995).

10.     Calls placed by a third party on behalf of that company are treated as if the company itself placed the call.  *See* Rules and Regulations Implementing the Telephone Consumer Protection Act; Request of State Farm Mutual Automatable Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667, ¶ 7 (2005).

11.     The phone calls at issue in this case were made by and/or for the benefit of Defendants.  Because these calls were made by or "on behalf" of Defendants, Defendants bear the responsibility for any violations of the TCPA, even if Defendants did not directly place the

calls.   Defendants are also responsible for the illegal actions of their agents and are also responsible for any illegal actions conducted in the course of any joint venture with any third party.

12.    Defendants were agents or joint venturers of each other at all times mentioned herein and were acting within the course and scope of such agency and/or joint venture. Defendants had actual and/or constructive knowledge of each other's acts and ratified, approved, joined in and/or authorized each other's acts in connection with the telephone call alleged herein.

13.    Moreover, whenever this Complaint refers to any act or acts of Defendants, the reference shall also be deemed to mean the directors, officers, employees, affiliates, or agents of the Defendants who authorized such act or acts while actively engaged in the management, direction or control of the affairs of Defendants, and each of them, and by persons who are parents or alter egos of Defendants while acting within the scope of their agency, affiliation or employment, jointly or severally.

14.    All acts attributed to Defendants in this Class Action Complaint shall also be deemed to refer to acts by any agent, associate, affiliate, subsidiary or joint venturer of Defendants or any act taken by any person, as defined in 47 U.S.C. § 153, on behalf of or for the benefit of Defendants.

**FACTUAL ALLEGATIONS**
**REGARDING CALLS FROM DEFENDANT TO PLAINTIFF**

15.    Plaintiff never provided permission to Defendants to call his telephone number nor to contact him regarding any goods or services offered by Defendants.

16.    On March 7, 2014, Plaintiff received a phone call from Defendants on Plaintiff's telephone.

5

17.    The phone number from which Defendants called Plaintiff, as it appeared on Plaintiff's caller-id, was 646-580-0994.

18.    Plaintiff answered this call, unaware it was a call from Defendants, and the voice on the other end of the line was an artificial or prerecorded voice.

19.    Upon answering the call from Defendants, the artificial or prerecorded voice made the following statements:

- "Hi this is Jennifer with Caribbean Cruise Line can you hear me ok"

- "the reason for my call is that we are looking for qualified travelers such as yourself to occupy unused cabin space aboard our magnificent cruise liner and generate positive word of mouth advertising for free so we give you a free cruise simply to show you a great time and all we ask in return is that you tell your friends and family about us when you get home, you can do that right?"

- "ok, let me just ask a couple of questions to make sure you qualify, it will only take a second then I can have you speak to a cruise specialist that can tell you all about it and answer any questions you have, first off, would you please verify that you are above 18 years of age, correct?"

- "and you would like to travel sometime in the next 18 months, right?"

- "as with any other cruise liner the Bahamas Celebration does not accept cash on board the ship except in the Casino, otherwise all incidentals such as shore excursions, beverages other than coffee and tea, as well as any shopping you do on board the ship are billed to your stateroom so a credit card is required, I am sure you carry a credit or debit card, right?"

- "ok, last question, this cruise is for two people, you can find someone to go with you in the next 18 months, right?"

- "great, this looks really good, congratulations you do qualify for the free cruise, now you will be responsible for your port fees of only $59 per person but I just wanted to tell you that there is nothing like a cruise to the Bahamas, and don't forget you will also receive a travel credit of up to $650 that can be applied toward various extended stay vacation options so I am going to place you on a brief hold to connect you with a cruise specialist, but I will stay on the line to make sure you are connected, so please hold on."

20.     After the foregoing statements and questions from the artificial or prerecorded voice a live operator came on the line and identified herself as Lashay ID 0987.  Plaintiff demanded to know how Defendants obtained his phone number and Plaintiff was transferred to someone who identified himself as Andrew ID 2128, stated he was a manager, and refused to explain to Plaintiff how Defendants obtained Plaintiff's phone number and otherwise indicated Defendants called Plaintiff's phone number at random.

21.     Defendants' representative also did not inform Plaintiff of any authorization by Plaintiff permitting Defendants to call Plaintiff's telephone number.

22.     Defendants also never advised Plaintiff of Defendants' phone number or address during the artificial or prerecorded voice portion of Defendants' unsolicited call to Plaintiff.

23.     Defendants also never advised Plaintiff of Defendants' name under which they are registered to conduct business with the Florida State Corporation Commission.

24.     Defendants did not within two seconds after announcing the call was from Caribbean Cruise Line provide an automated, interactive voice- and/or key press-activated opt-

out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism.

25.     Defendants' call to Plaintiff displayed a phone number on Plaintiff's caller-id which Defendants knew was misleading or provided inaccurate called identification information. Defendants' published number is 800-314-7735 but this number did not appear on Plaintiff's caller-id despite the call to Plaintiff being placed by or on behalf of Celebration Cruise Line.

26.     The Bahamas Celebration is a cruise ship owned and operated by Celebration Cruise Line.  Upon information and belief, Caribbean Cruise Line does not own or operate any cruise ship.  Defendants are both Florida business entities with principal places of business in this district, and mailing addresses at 2419 E. Commercial Blvd., Fort Lauderdale, Florida 33308 – as were their principal place of business until their most recent annual report filings with the Florida Department of State, Division of Corporations.   The call placed to Plaintiff by Defendants, as alleged above, was placed by or on behalf of Caribbean Cruise Line and Celebration Cruise Line because, *inter alia*, the automated call was seeking a credit card authorization for charges related to a cruise on the Bahamas Celebration, a cruise ship owned and operated by Celebration Cruise Line.

## FACTUAL ALLEGATIONS REGARDING DEFENDANTS' USE OF AN AUTOMATIC TELEPHONE DIALING SYSTEM

27.     Following notification to Defendants of Plaintiff's anticipated lawsuit for Defendants' violation of the Telephone Consumer Protection Act, Defendants' counsel has repeatedly demanded Plaintiff's phone number because, as Defendants' counsel explained, Defendants could not identify Plaintiff's phone number using only Plaintiff's name.  This makes it apparent that Defendants' generated and dialed Plaintiff's phone number automatically from a calling list or from a list generated randomly or sequentially.

28.     The foregoing coupled with Defendants' inability to explain to Plaintiff during their unsolicited call how they obtained his phone number and their use of a prerecorded or artificial voice indicate that Defendants' phone system has the capacity to: (i) generate numbers and dial them without human intervention; (ii) generate numbers from calling lists and dial them without human intervention; (iii) generate numbers randomly and dial them without human intervention; (iv) generate numbers sequentially and dial them without human intervention; (v) store numbers and dial those numbers from a database of numbers; (vi) store numbers and dial those numbers at random; (vii) store numbers and dial those numbers sequentially; (vii) produce numbers and dial those numbers from a database of numbers; (viii) produce numbers and dial those numbers at random; (ix) produce numbers and dial those numbers sequentially; (x) produce telephone numbers to be called, using a sequential number generator and to dial such numbers; (xi) produce telephone numbers to be called, using a sequential number generator and to dial such numbers; (xii) store telephone numbers to be called, using a random number generator and to dial such numbers; and (xiii) store telephone numbers to be called, using a random number generator and to dial such numbers.

29.     Defendants' phone system is an automatic telephone dialing system.

## FACTUAL ALLEGATIONS
## REGARDING PLAINTIFF'S REVIEW OF ONLINE FORUMS

30.     Plaintiff located numerous online articles and forums discussing the telemarketing scam employed by Defendants and the mass calling character of Defendants' telemarketing campaign.  For example, the following is a review located by Plaintiff on www.ripoffreport.com:

> In our opinion, to say that the Bahamas Celebration Cruise is a joke, a scam and a rip off - is an understatement.  I did some research and read many reviews before committing to this trip and thought that I could stay on top of things. I thought that I had handled and set straight every problem prior to the trip. That was

not the case and here I am now adding my own opinion to the many others.

I don't know where the positive reviews come from, but I can tell you that every negative review you read is true and worse. Although some of the facts are different, our story and experiences are not dissimilar. The bottom line is, our trip and association with the ship and all connected with it - was a disaster!  We were (to say the least) nickeled and dimed to death; misled; lied to; and paid for upgrades that were non-existent.  We will never again travel with "Caribbean Cruise Lines"; "Bahamas Celebration Cruise Line" or the other 7 or 8 names they go by.

It is said that there is strength in numbers. Perhaps we can't stop this Cruise Line from deceiving and taking advantage of others, but maybe we (together) can slow them down.  Maybe we can help some other innocent and trusting travelers from experiencing the same hardships and dishonest, fraudulent treatment we encountered.

Here is our story, add it to the others, learn from it, pass it on……

I made a donation to a children's foundation and this trip was my "Thank You Gift". (Obviously they sold my name.)  Although I turned down "the gift" a number of times, I kept getting phone calls from "Caribbean Cruise Lines" - so finally I said, "Okay, tell me more." - and so the start of misleading, ambiguous and confusing information.

Although there were <u>many</u> problems, I have chosen to limit them to the few listed below.

<u>Trip Cost:</u>  A free trip that was to have been only $200 (to pay for taxes and misc. fees) ended up costing more than $1,200 and another $1,000 + in transportation. I had incurred some of the fees because of upgrades.

<u>Upgrades:</u>  <u>All</u> the upgrades we paid for were non-existent and non refundable.

<u>Transportation:</u>   We were given a ½ price airfare voucher which we could not use - none of the discounted travel dates offered coincided we our trip dates.

<u>Free 8 day Car Rental:</u>  We were led to believe that we could use a rental car in the Bahamas.  Not True.  We could only use it for the 2 days we were in Fort Lauderdale. We were to have paid only $20 for the two days, but instead had to pay $60. I can't answer why

they gave us the car for 8 days, unless it was to get more money (for days not being used).

<u>Restaurant Voucher:</u>   We were to have been given a $50 voucher to "Café Aruba".  We never got it.

<u>Time Share:</u>   We didn't know anything about a time share presentation until about the fourth phone call (of more than 2 dozen calls). We were led to believe that it would be a power point presentation in the same hotel we were staying.  The "presentation" turned out to be a one-on-one in West Palm Beach - an hour drive from our hotel. However, unlike some of the other guests' reports, we didn't feel pressured.  Although we originally had no intention of buying, it was right for us, good locations, good price……

We didn't have any problems with the Time Share Reps, but we did with the Cruise Line reps.  They misled us as to the location of the meeting and the time we had to invest.  Basically, all 3 days in Fort Lauderdale were wasted at our expense - literally.

<u>Charge Card:</u>   Discover card was one of the ship approved charge cards.  Prior to travel, we notified our credit card companies and although we completed all the ships forms notifying them that we would use the Discover Card, the ship turned down its use.  At 9 am on the first day of disembarkation in the Bahamas, there were 23 passengers that were refused its use.  As time went on, the number quickly multiplied.

The problem was not with Discover, but with the ship. The same problem was repeated on our return home. Prior to boarding, ship officials again took the Discover info, but upon disembarkation in Florida - they refused it.  We were fortunate to have brought another card with us. Some of our fellow passengers were not so lucky.

<u>Complaints:</u>   All our grievances were shifted from one individual or department to another and another…... All our concerns and complaints went unsettled. I was finally able to find out that I had booked directly through the Cruise Line, but this info was difficult to attain and also went nowhere.

Very early on in my involvement with the Cruise Line Reps, I knew I had to keep notes - day, date, time, reps name, title, phone number, summarization of discussions, etc. Later on, before hanging up, I asked the rep to repeat what was in the computerized notes.  I have more than 26 pages of notes. All bases covered ?  NO !!!!  I found that regardless of what they tell you, they

skillfully change the contents, give misleading information, and in most cases give one lie after another.

   1.  Paid $349 extra for more days in the Bahamas. They gave me Orlando. This problem was corrected.

   2.  Paid appx $250 extra for a Ship Cabin at the highest level, facing the ocean, king/queen bed with a balcony.  I found out the ship was not built with any.  There are <u>no</u> balconies.

I was offered a "deluxe cabin suite", but another call and yet another rep told me that it was located below deck (no windows). I turned it down.  Later found out this info was not true either.

I finally agreed to a "large cabin" on level 8 with a king bed and a wall to wall window facing the ocean.  The cabin turned out to be smaller than a closet.  The king bed was 2 singles pushed together up against one side of a wall.  A slant was created where the mattresses met. This slant kept rolling me into the wall. The feet of my 6'4" boyfriend hung over the bed. There was so little space that we both had to climb over one another to get in and out.

So much for having pre informed them of our senior status and some handicap issues, which I was assured, would be honored - they weren't.

   3.  Paid extra for better accommodations and food packages in both Florida and the Bahamas.  Both were non existent.  We were at the Ramada in Florida (no beach anywhere for miles; awful food, poor accommodations).

We were assigned to a hotel in the Bahamas that had been closed for 3 years. Can't tell you why this was never corrected, nor where the money for the food package went.

At the Lucayan, we were going to be charged $87 extra per person, per day for food and $50 extra per person for a room on the 10th floor facing the ocean.  We turned down the food pkg, but stood our grounds on the room.  They compromised with a 9th floor room facing the Marina - no extra charge (and we had no intention of paying more, yet again). We accepted, only to find that in order to see the marina we had to look past the bldg roof tops, air conditioning units, and all the streets in between. Yes, the marina was visible, if you had binoculars.

Before travel, I asked and was not told the truth about Grand Bahamas and Lucaya. I later found that the Grand Bahamas Island consists of the Freeport Bonded Area and the districts of East and West Grand Bahamas, and that Lucaya is a suburb of Freeport. I

understand that Freeport is one of the poorest locations in all of the Bahamas. And, from what we saw and experienced, we found this to be true.

Alan Thicke and his wife (Tanya) are spokespersons for this cruise line and the vacation packages connected to it. Based on what had to say in all the advertisements connected to this trip, I was especially expecting the Grand Lucayan Resort to be spectacular. It was not. The beach and pools were disappointing. Nice people, pretty grounds, lots of tourist souvenir shopping and eating areas in the "Marketplace" (across from the "resort" and Casino), and several excursions available - but not much else. I don't understand why it's called a "resort" - far from my definition and expectations of a resort. In addition, you don't dare want to travel too far away from the "resort" and Marketplace.

This has certainly changed my opinion and trust level of Alan Thicke and his wife. I wonder if they have taken this "cruise", stayed at any of the hotels, attended the time share presentations or even bothered to check out any of the information they are so free and cavalier in broadcasting. Maybe they should both go under cover and experience for themselves the hardships and difficulties we had to endure. Let's see if they like their trip with the Bahamas Celebration Cruise line, their stay at the Ramada, etc. However, if they are aware of the cruise lines deceptive and unethical practices, and have chosen to support them anyway - well, shame on them. That makes them just as culpable, dishonest and unprofessional!!!

During our trip, we met and spoke with many other travelers. No problems were experienced from guests that had come in on Norwegian or Carnival. However, almost everyone else we met that had come in on the Bahamas Celebration and had just as many horror stories to share. None of us paid the same money for the same thing. The prices ranged from $187 to $3,000…… All of us agreed that we will never take this type of vacation again.

For us it is not about the money we spent. Certainly $1,200 plus transportation is more than a reasonable (and actually - a cheap) price to pay for a 9 day vacation for two. It is, however, the fact that we were misled, lied to, deceived, duped…… by unethical, conmen/women who used discriminatory practices and deceptive marketing tactics in order to lure and attract clientele for the purposes of making money on selling non existent services and upgrades, time share properties and a host of other products.

We feel that this cruise ship is not a cruise ship at all. We didn't get the trip that was advertised, the trip we expected, and we didn't

get the upgrades and services for which we paid additional money beyond the original quoted price. We feel we have been swindled and have no way to make things right. As stated earlier - we will never again travel or do business with "Caribbean Cruise Lines", "Bahamas Celebration Cruise Line" or any of the other names they go by.

Beware, so that nothing like this happened [sic] to you!

31.     The following review on www.cruisecritic.com was also located by Plaintiff:

Let's clear up a key point of confusion right away. *Celebration* Cruise Line is the actual name of the line on which you'll be sailing. *Caribbean* Cruise Line is not a cruise line at all, but the name of a wholesaler that's touting the free cruise. But the difference between line and wholesaler seems to be blurry at best, with numerous complaints on sites like Cruise Critic, complaintsboard.com and ripoffreport.com conflating line and seller. It doesn't help that each has a telegenic spokesmodel -- Daisy Fuentes for Celebration and Carmen Electra for Caribbean.

As a travel wholesaler, Caribbean Cruise Line is licensed and bonded in the State of Florida, "Fla. Seller of Travel Reg. No. ST-37425." (Though, there are timeshare marketing outposts in locations where the company is registered; for instance, in New Jersey, it's registered by the New Jersey Real Estate Commission.) Regardless of the official license, the charges against Caribbean Cruise Lines have been fast and furious -- consumers have had difficulties getting refunds, been subjected to aggressive sales tactics, discovered that salespeople had misrepresented cabin locations -- and many equate the two companies or confuse one for the other.

Angelina from Pennsylvania, who booked an extended-stay vacation after seeing Carmen Electra touting the cruise on TV, told us a horror story, which included more than five hours of timeshare presentations that they were not told they'd have to attend. "You have to go, or you will not be allowed to get on the cruise ship if you don't," she told us.

Florida's Division of Consumer Services has record of at least 40 complaints, the content of which we've yet to receive in the form of a public record request. Moreover, the Better Business Bureau gives Caribbean Cruise Line and "F" -- and the BBB has documented 459 complaints filed against the business, 396 of which have been considered resolved. Still, according to a spokesperson at the Florida Attorney General's Office, the body responsible for responding in earnest to those consumer

complaints, no official investigation has been opened or closed on Caribbean Cruise Line.

32.     The following is another review located by Plaintiff on www.ripoffreport.com:

> I am tired. I've spent the day researching this company and trying to decide how badly I got taken.  It's a scam! It's a company who called me pretending to be a Political Survey.  I was working hard, and told them I'd answer a few questions, which begin to wear you down, and they the slide into something about, "thanks for taking our survey.  because you did, you've won a $199 2 day Bahamas cruise."  I spent the next hour telling them no, and they kept sweetening the pot with more goodies.  I asked them how they could give a week's vacation with hotel and meals for 2, a rental car, and 2 day Bahamas cruise away for $598 (total it was up to now).  they said, "because we own the ship, the hotel, and the restaurants, and we have some empty rooms from time to time. We also know that if we show you a great time, you'll come back."

> I questioned if they were a Time Share company.  They said no. I told them I didn't have time to vacation, and they said i'd have 18 months.  I said I had no money, and they said we'll add on 2 other bonus trips: 4 days, 3 nights in puerto Vallarta, and 3 days, 2 nights in Las Vegas for $598.

> I said, "I'd like some time to research this trip before buying, and they gave me the hard sale/pressure tactic that this offer was only good in the next 10 minutes - which should have told me something.  I was also told me that I'd be able to get a full refund, no questions asked, within the 1st 30 days, so I felt a little better about it.  However, as you can see in the other RipOff Reports, no one is able to get their money back.  I will add the rest tomorrow.

33.     The following is another review located by Plaintiff on www.ripoffreport.com:

> This company called me to participate in a survey. Then they stated that as a reward they were offering me a completely free cruise for two if I wanted. All I needed to do was pay the taxes. They assured me that the tickets were good for 18 months and that there were no strings attached. I paid the taxes and purchased travel insurance. All totaled about $159. All I had to do was call and book the cruise on whatever day I needed to travel.

> But Everytime I called to book my free cruise, the following pattern played out: I'd give them a travel date, they'd tell me it was available, then they'd ask me to purchase other services like car rentals and hotel rooms. I'd tell them I had no need for those and I

just wanted the free tickets promised. Then all of a sudden they'd tell me the last free cabins had just been booked but they could give me a premium cabin for about $550. Of course I'd turn it down and wait for another opportunity when I had time to travel.

But for 18 months, each time I called to get my travel tickets, the conversation was exactly the same: they'd tell me the free cabins are available, but after I decline to purchase other services, the cabins would suddenly become unvailable unless I upgraded to one of their other premium cabins for several hundred dollars more.

To add insult to injury, just before my 18 months were up, I called the company to verify how long my tickets were valid for. They assured me that the tickets were valid for life. Then less than a month later, an agent from the company called me and offered to extend my 18 month ticket for several hundred dollars more.

I told them they were a scam and I asked for my money back, which they of course declined to refund.

34.     Plaintiff located dozens and dozens, if not more, of other reviews online which were similar in nature to the foregoing example reviews.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure for all claims.

36.     Plaintiff brings this class action on behalf of himself and all others persons within the United States who within the four year period prior to filing this Class Action Complaint (the "Class Period") received a telemarketing call by or on behalf of Defendants or by their agents using an artificial or prerecorded voice or an automatic telephone dialing system.  Excluded from the class definition are (i) Defendants or any of their employees or agents, or any of their family members, or (ii) any person from whom Defendants have in their records express written consent signed by such person permitting Defendants to telemarket to that person goods or services offered by Defendants using an artificial or prerecorded voice or an automatic telephone dialing system.  (The "Class").

16

37.     The members of the Class are so numerous that joinder of all Class members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, this information is easily ascertainable through discovery of Defendants' records, and Plaintiff believes that there are likely thousands, if not more, individuals in the Class.

38.     Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

      a.     Whether Defendants made calls using an artificial or prerecorded voice or using an automatic telephone dialing system during the Class Period to sell goods or services offered by Defendants.

      b.     Whether Defendants should be enjoined from making such calls.

39.     Plaintiff's claims are typical of the claims of the other members of the Class, because the Plaintiff and all members of the Class were called by Defendants seeking to market to them goods or services offered by Defendants without their prior consent.

40.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.  The interests of Plaintiff are coincident with and not antagonistic to the interests of the other members of the Class.

41.     Class certification of Plaintiff's claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants.  In addition, Class certification of Plaintiff's claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate injunctive relief with respect to

Plaintiff and the Class as a whole. The members of the Class are entitled to injunctive relief to remedy Defendants' ongoing statutory violations.

42.     Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly adjudicating the controversy.   Moreover, statutory damages for any one individual plaintiff are not sufficient to induce individual class members to control the prosecution of separate actions and management of these claims because a single class action is more desirable and creates fewer difficulties than that presented by individuals' claims by each class member.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227

43.     Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 42 as if fully set forth herein.

44.     Defendants, directly or through their agents, used an artificial or prerecorded voice and/or an automatic telephone dialing system to call Plaintiff and other Class members, without their prior consent, marketing goods or services offered by Defendants.

45.     Defendants, directly or through their agents, did not at the beginning of their telemarketing calls to Plaintiff and other Class member state clearly the name of the entities, as registered with the Florida Department of State, Division of Corporations, responsible for initiating the call.

46.     The artificial or prerecorded voice in Defendants' telemarketing calls did not state Defendants' telephone number or any other phone number.

47.     Defendants, directly or through their agents, did not, within two seconds of providing the identification information required by 47 C.F.R. § 64.1200(b)(1), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for Plaintiff and other Class members to make a do-not-call request, including brief explanatory instructions on how to use such mechanism.

48.     Based on the foregoing, Plaintiff and other Class members are entitled to an award of $500 for each violation of 47 U.S.C. § 227 as well as injunctive relief prohibiting such conduct in the future.

**COUNT II**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227**

49.     Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 42 as if fully set forth herein.

50.     Numerous complaints have been lodged against Defendants to, *inter alia*, lawmakers and state agencies around the country related to Defendants' telemarketing practices. Defendants have nonetheless persisted in their violations of 47 U.S.C. § 227.

51.     Defendants, directly or through their agents, knowingly and/or willfully used an artificial or prerecorded voice and/or an automatic telephone dialing system to call Plaintiff and other Class members, without their prior consent, marketing goods or services offered by Defendant.

52.     Defendants, directly or through their agents, did not at the beginning of their telemarketing calls to Plaintiff and other Class member state clearly the name of the entities, as

registered with the Florida Department of State, Division of Corporations, responsible for initiating the call.

53.     The artificial or prerecorded voice in Defendants' telemarketing calls did not state Defendants' telephone number or any other phone number.

54.     Defendants, directly or through their agents, did not, within two seconds of providing the identification information required by 47 C.F.R. § 64.1200(b)(1), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for Plaintiff and other Class members to make a do-not-call request, including brief explanatory instructions on how to use such mechanism.

55.     Based on the foregoing, Plaintiff and other Class members are entitled to an award of $1,500 for each violation of 47 U.S.C. § 227 as well as injunctive relief prohibiting such conduct in the future.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment granting the following relief:

A.  As to Count I:

    a.  A common fund comprising an award of $500 in statutory damages for each of the following:

        i.  each and every call made using an artificial or prerecorded voice;

        ii.  each and every call made using an automatic telephone dialing system to any phone numbers describe in 47 U.S.C. § 227(b)(A)(i)-(iii);

        iii.  each and every call made in which Defendants did not at the beginning of the artificial or prerecorded voice telephone message state the identity of the businesses responsible for the call;

        iv.  each and every call made in which the artificial or prerecorded voice telephone message did not state the telephone number of the businesses responsible for the call;

v. each and every call made using an artificial or prerecorded voice in which Defendants did not, within two seconds of providing the identification information required by 47 C.F.R. § 64.1200(b)(1), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism; and

vi. each and every other violation of any other provision of 47 U.S.C. § 227 or 47 C.F.R. § 64.1200.

b. Injunctive relief prohibiting Defendants from making any calls or from any conduct directed at having any other person or entity make any calls:

i. using an artificial or prerecorded voice without first obtaining the "prior express written consent" of the called party as required by 47 C.F.R. § 64.1200;

ii. using an automatic telephone dialing system to any phone numbers describe in 47 U.S.C. § 227(b)(A)(i)-(iii) without first obtaining the "prior express written consent" of the called party as required by 47 C.F.R. § 64.1200;

iii. using an artificial or prerecorded voice which does not begin with an announcement identifying "Celebration Cruise Line, LLC" and "Caribbean Cruise Line, Inc." and any other businesses on whose behalf the call is made, as such names are registered with the Florida Department of State, Division of Corporations;

iv. in which the artificial or prerecorded voice telephone message does not identify the phone number 800-314-7735 or any other then current primary phone number advertised by Defendants for booking a cruise on the Bahamas Celebration or on any other ship owned or operated, directly or indirectly, by Defendants;

v. using an artificial or prerecorded voice without, within two seconds of providing the identification information required by 47 C.F.R. § 64.1200(b)(1), providing an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism;

vi. which does not result in the caller-id of the person being called displaying 800-314-7735 or any other then current primary phone number advertised by Defendants for booking a cruise on the Bahamas Celebration or on any other ship owned or operated, directly or indirectly, by Defendants; and

vii. which otherwise violate 47 U.S.C. § 227 or 47 C.F.R. § 64.1200.

B.  As to Count II:

    a.  A common fund comprising an award of $1,500 in statutory damages for each of the following:

        i.  each and every call made using an artificial or prerecorded voice;

        ii.  each and every call made using an automatic telephone dialing system to any phone numbers describe in 47 U.S.C. § 227(b)(A)(i)-(iii);

        iii.  each and every call made in which Defendants did not at the beginning of the artificial or prerecorded voice telephone message state the identity of the businesses responsible for the call;

        iv.  each and every call made in which the artificial or prerecorded voice telephone message did not state the telephone number of the businesses responsible for the call;

        v.  each and every call made using an artificial or prerecorded voice in which Defendants did not, within two seconds of providing the identification information required by 47 C.F.R. § 64.1200(b)(1), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism; and

        vi.  each and every other violation of any other provision of 47 U.S.C. § 227 or 47 C.F.R. § 64.1200.

    b.  Injunctive relief prohibiting Defendants from making any calls or from any conduct directed at having any other person or entity make any calls:

        i.  using an artificial or prerecorded voice without first obtaining the "prior express written consent" of the called party as required by 47 C.F.R. § 64.1200;

        ii.  using an automatic telephone dialing system to any phone numbers describe in 47 U.S.C. § 227(b)(A)(i)-(iii) without first obtaining the "prior express written consent" of the called party as required by 47 C.F.R. § 64.1200;

        iii.  using an artificial or prerecorded voice which does not begin with an announcement identifying "Celebration Cruise Line, LLC" and "Caribbean Cruise Line, Inc." and any other businesses on whose behalf the call is made, as such names are registered with the Florida Department of State, Division of Corporations;

        iv.  in which the artificial or prerecorded voice telephone message does not identify the phone number 800-314-7735 or any other then current

primary phone number advertised by Defendants for booking a cruise on the Bahamas Celebration or on any other ship owned or operated, directly or indirectly, by Defendants;

v.   using an artificial or prerecorded voice without, within two seconds of providing the identification information required by 47 C.F.R. § 64.1200(b)(1), providing an automated, interactive voice-and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism;

vi.   which does not result in the caller-id of the person being called displaying 800-314-7735 or any other then current primary phone number advertised by Defendants for booking a cruise on the Bahamas Celebration or on any other ship owned or operated, directly or indirectly, by Defendants; and

vii.   which otherwise violate 47 U.S.C. § 227 or 47 C.F.R. § 64.1200.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated:   May 21, 2014

Respectfully submitted,

LAPIN & LEICHTLING, LLP
*Attorneys for Plaintiff*
255 Alhambra Circle
Suite 1250
Coral Gables, Florida 33134
Telephone No.:   (305) 569-4100
Facsimile No.:   (305) 569-0000

By: _____/s/ Adam B. Leichtling_____
ADAM B. LEICHTLING
Florida Bar No.: 984175
aleichtling@ll-lawfirm.com

Aaron Siri, Esq.
aaron@sirillp.com
SIRI & GLIMSTAD LLP
120 East 31st Street
New York, New York 10016
Telephone No.:   (212) 532-1091
Facsimile No.:   (646) 417-5967
*Attorneys for Plaintiff*
*pro hac vice application in process*